IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| WALTER JONES | § | PLAINTIFF |
|---|---|---|
| | § | |
| | § | |
| v. | § | Civil No. 1:23-cv-326-HSO-RPM |
| | § | |
| | § | |
| STATE FARM MUTUAL | § | |
| AUTOMOBILE INSURANCE | § | DEFENDANT |
| COMPANY | | |

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF WALTER JONES'S AND DEFENDANT STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S MOTIONS [50], [55] FOR PARTIAL SUMMARY JUDGMENT**

Following a motor vehicle accident, Plaintiff Walter Jones ("Jones" or "Plaintiff") filed suit against his uninsured motorist insurance carrier, Defendant State Farm Mutual Insurance Company ("State Farm" or "Defendant"), for breach of contractual obligations and bad faith. *See* Compl. [1] at 2. Both parties have filed Motions [50], [55] seeking partial summary judgment, *see* Mot. [50], [55], but the Court finds that there remain genuine disputes of material fact requiring resolution at trial. Both Motions [50], [55] should be denied.

I. BACKGROUND

A. Factual Background

In July 2023 Plaintiff Walter Jones was involved in a motor vehicle accident in Gulfport, Mississippi, when he was struck by an unknown motorist who fled the scene. *See* Compl. [1] at 2. Jones allegedly "suffered serious injuries and incurred substantial medical expenses arising from his medical treatment." *Id.* At the time

of the accident Jones was insured by State Farm under three separate insurance policies, which together provided a total of $75,000.00 in Uninsured/Underinsured Motorist ("UM") coverage. *See id.* at 2; Mem. [56] at 1; Mem. [52] at 2. The "Uninsured Motor Vehicle Coverages" provision of Jones's car insurance policy (the "Policy") with State Farm states, in pertinent part, the following:

> **Insuring Agreements**
>
> 1. Under **Uninsured Motor Vehicle Coverage (Bodily Injury)**, *we* will pay compensatory damages for ***bodily injury*** an ***insured*** is legally entitled to collect from the owner or driver of an ***uninsured motor vehicle***. The ***bodily injury*** must be
>
> a. sustained by an ***insured***; and
> b. caused by an accident that involved the operation, maintenance, or use of an ***uninsured motor vehicle*** as a motor vehicle.
>
> 2. Under **Uninsured Motor Vehicle coverage (Bodily Injury and Property Damage)**, *we* will pay compensatory damages for ***bodily injury*** and ***property damage*** an ***insured*** is legally entitled to collect from the owner or driver of an ***uninsured motor vehicle***. The ***bodily injury*** or ***property damage*** must be caused by an accident that involves the operation, maintenance, or use of an ***uninsured motor vehicle*** as a motor vehicle. The ***bodily injury*** must be sustained by an ***insured***.
>
> \* \* \*
>
> **Deciding Fault and Amount**
>
> 1. a. The ***insured*** and ***we*** must agree to the answers to the following two questions
>
> (1) Is the ***insured*** legally entitled to collect compensatory damages from the owner or driver of the ***uninsured motor vehicle***?
>
> (2) If the answer to 1.a.(1) above is yes, then what is the amount of the compensatory damages that the ***insured*** is legally entitled to collect from the owner or driver of the ***uninsured motor vehicle***?

> b. If there is no agreement on the answer to either question in 1.a. above, then the *insured* shall
>
> (1) file a lawsuit, in a state or federal court that has jurisdiction, against
>
> (a) *us*;
> (b) the owner and driver of the *uninsured motor vehicle* unless *we* have consented to a settlement offer proposed by or on behalf of such owner or driver; and
> (c) any other party or parties who may be legally liable for the *insured's* damages
>
> (2) consent to a jury trial if requested by *us*;
>
> (3) agree that *we* may contest the issues of liability and the amount of damages . . . .

Ex. [55-2] at 18 (emphasis in original).

Jones filed a claim for damages with State Farm on July 29, 2023. *See* Mem. [56] at 2; Ex. [55-1] at 10 (Claim Notes). Two days later State Farm determined that UM property damage coverage would apply to the accident and informed Jones of that determination. *See* Mem. [56] at 2; Ex. [55-5] at 1. On August 10, 2023, State Farm made a payment of $1,772.44 to the automotive shop for repairs to Plaintiff's vehicle, and on October 12, 2023, it issued $1,000.00 to Jones in medical payments coverage, which was a separate payment provided for in the Medical Payments Coverage provision of the Policy. *See* Mem. [56] at 3; Ex. [55-7] at 2. On November 7, 2023, Plaintiff's counsel sent State Farm a demand letter advising that Jones's medical bills totaled $16,950.30 and demanding all available policy limits. *See* Ex. [55-12].

Following its determination that UM coverage would apply to Plaintiff's accident, State Farm assigned a "UM/UIM claims specialist" named Jessica Fricke

3

("Fricke") to handle Plaintiff's claim. *See* Mem. [56] at 3. After reviewing Jones's claim, Fricke made an offer to Jones's counsel in the amount of $15,680.00, *see* Ex. [55-15], a value Jones claims she determined by inputting the bills into the "Mitchell program," which reduced the reimbursement amount to 200% of the Medicare reimbursement rate, *see* Mem. [52] at 4. In response to that settlement offer, Plaintiff's counsel stated that "State Farm is in bad faith," *see* Ex. [55-16], and filed this lawsuit. After this suit was filed, "State Farm offered $19,000 on March 19, 2024," which was over five months after Jones's medical treatments ended. Mem. [63] at 2-3. According to Plaintiff, "[a]s of February 12, 2025, . . . State Farm has paid [him] $0.00 under [his] UM coverage." Mem. [64] at 2.

B. <u>Procedural History</u>

Plaintiff filed suit on November 21, 2023, alleging that "[d]espite having been presented with a valid claim for UM benefits, State Farm has breached its contractual obligations in bad faith and refused to pay sums legally owed to Plaintiff under the terms of the policies." Compl. [1] at 2. And "State Farm acted with no arguable or legitimate basis and has committed malice and/or gross negligence with regard to Plaintiff's rights under the policies." *Id.* Plaintiff seeks compensatory, punitive, and extra-contractual damages, including attorney's fees. *See id.* at 3.

In his Motion [50] for Partial Summary Judgment,[1] Plaintiff first argues that State Farm denied his claim in bad faith because "the Mitchell program uses a

---

[1] Although it is not entirely clear, it appears that Plaintiff is seeking partial summary judgment solely on the issue of bad faith breach, not on the underlying issue of breach of contract. *See* Mem.

4

'pricing module' of 200% the Medicare reimbursement rate when evaluating medical expenses submitted by its insureds," Mem. [52] at 10, which was "in place prior to the accident," *id*.  In other words, Plaintiff claims that State Farm used an "arbitrary 'pricing module'" which was not authorized under the Policy—and which he claims violates the collateral source rule—to reduce Jones's medical reimbursement to 200% of the Medicare reimbursement rate.  *Id.*  Second, Plaintiff asserts that State Farm has engaged in bad faith delay in payment because it had "no reasonable or arguable basis for failing to pay at least some undisputed amount to Mr. Jones." *Id.* at 12-13.  And finally, Plaintiff contends that State Farm has unfairly attempted to "shoe-horn terms and conditions of the Medical Payments coverage into Mr. Jones's [UM] policy." *Id.* at 13.

State Farm responds that its "consideration of two-times the Medicare reimbursement rate when evaluating the fair and reasonable value of Jones's medical expenses was reasonable and not contrary to any controlling Mississippi authority." Mem. [63] at 1.  According to State Farm, "utilizing the Medicare reimbursement rate—which is a reasonable standard—does not run afoul of Mississippi's collateral source rule as State Farm is not considering payment from other sources to reduce the amounts owed." *Id.* at 2.  For that reason, State Farm

---

[52] at 1 ("Plaintiff's Motion for Partial Summary Judgment should be granted as Defendant breached its contractual obligations in bad faith and has made no effort to remedy this breach.").  Even assuming Plaintiff were seeking summary judgment on his claim for breach of contract, that request would be denied.  As the Court will explain, there are genuine issues of material fact on the question of whether Jones's claim was fairly adjusted.  Those issues bear on both a claim for breach of contract and a claim for bad faith.  Therefore, summary judgment is not warranted at this stage.

maintains that it "properly investigated the claim, made prompt claim decisions, and made an offer to Plaintiff based on arguable and legitimate reasons." *Id.*

In reply, Plaintiff counters that "State Farm had a plan in place to 'reduce' any and all medical expenses to '200% of the Medicare reimbursement' rate **prior to** Mr. Jones's claim coming into existence." Mem. [64] at 1 (emphasis in original). That means "State Farm has no reasonably arguable basis in the policy, in law, or in fact for its willful decision to 'reduce' Mr. Jones's medical expenses," *id.* at 2, making its breach in bad faith, *id.* at 3.

State Farm's Motion [55] for Partial Summary Judgment seeks summary judgment solely on the issue of extracontractual and punitive damages. *See* Mem. [56] at 12. Many of the arguments are similar to those raised in briefing Jones's Motion [50]. State Farm argues that it "acted in good faith throughout the entire claim-handling process," *id.* at 13, and that "Jones cannot meet his heavy burden on summary judgment to demonstrate that State Farm lacked reasonable bases for its decisions, negating his claims for punitive and other extracontractual damages," *id.* Additionally, State Farm argues that although "[t]he Mississippi Code states: '[p]roof that medical, hospital, and doctor bills were paid or incurred because of any illness, disease or injury shall be prima facie evidence that such bills so paid or incurred were reasonable or necessary,'" *id.* at 13-14 (quoting Miss. Code Ann. § 41-9-119), it is entitled to "rebut the necessity and reasonableness of the bills by proper evidence," *id.* at 14 (quoting *Downs v. Ackerman*, 115 So. 3d 785, 790 (Miss. 2013) (citations omitted)).

6

Jones responds that the "issue of extra-contractual damages should be considered by the jury," Mem. [61] at 12, because "State Farm intentionally, willfully, and knowingly attempted (and still attempts) to deny a valid element of damages payable under the UM policy," *id.* at 15. In reply, State Farm characterizes the issue as "a mere pocketbook dispute [which] is not sufficient to submit the issue of punitive damages to the jury." Mem. [65] at 4. And, regarding its use of the Mitchell DecisionPoint program, State Farm asserts that "not only is the program a tool which the claim specialist has discretion to rely upon, but the program's consideration of two-times the Medicare reimbursement rate—in accordance with industry standards—for expense incurred after the date of loss is not unreasonable or contrary to Mississippi law." Mem. [65] at 3.

## II. DISCUSSION

A.   Relevant Law

1.   Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(a), summary judgment in a party's favor is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the movant carries this initial burden, the nonmovant must present evidence beyond the pleadings demonstrating "specific facts showing that there is a genuine issue for trial." *Guzman v. Allstate Assurance Co.,* 18 F.4th 157, 160 (5th Cir. 2021); *see Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994). To rebut a properly supported motion for summary judgment, the nonmovant must

7

show, with "significant probative evidence," that there exists a genuine issue of material fact for resolution at trial. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Crane v. City of Arlington*, 50 F.4th 453, 461 (5th Cir. 2022) (quotation omitted). When "critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant," summary judgment is appropriate. *In re Deepwater Horizon*, 48 F.4th 378, 382 (5th Cir. 2022). The Court views all facts and inferences in the light most favorable to the nonmovant, *see RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 858 (5th Cir. 2010), but conclusory allegations and unsubstantiated assertions are insufficient to withstand summary judgment, *see Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996). When a movant files an "offensive" motion for summary judgment and bears the burden of proof on that claim, the movant "must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original).

2.  <u>Relevant Mississippi Law</u>

Because subject-matter jurisdiction in this case is premised upon diversity of citizenship, the Court applies Mississippi substantive law. *See Compliance Source, Inc. v. GreenPoint Mortg. Funding, Inc.*, 624 F.3d 252, 259 (5th Cir. 2010); *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). In Mississippi, "insurance

policies are contracts, and as such, they are to be enforced according to their provisions." *Corban v. United Servs. Auto. Ass'n.*, 20 So. 3d 601, 609 (Miss. 2009) (quoting *Noxubee Cnty. Sch. Dist. v. United Nat'l Ins. Co.*, 883 So. 2d 1159, 1164 (Miss. 2004)). If the language of an insurance policy is clear and unambiguous, "then the language of the policy must be interpreted as written." *Hayne v. The Doctors Co.*, 145 So. 3d 1175, 1180 (Miss. 2014) (citing *Hankins v. Md. Cas. Co./Zurich Am. Ins. Co.*, 101 So. 3d 645, 652 (Miss. 2012)).

According to the Mississippi Supreme Court, "[w]hen an insured makes a claim against his policy, the insurer must perform a 'prompt and adequate investigation and make a reasonable, good faith decision based on that investigation.'" *United Servs. Auto. Ass. v. Estate of Sylvia F. Minor*, No. 2023-CA-49-SCT, 2024 WL 4985302, at *6 (Miss. Dec. 5, 2024) (quoting *Hoover v. United Servs. Auto Ass'n*, 125 So. 3d 636, 642 (Miss. 2013)). To prevail on a claim for bad faith, "a plaintiff carries the 'heavy burden' to prove that his insurer lacked any arguable basis for its decision." *Estate of Sylvia F. Minor*, 2024 WL 4985302, at *6 (quoting *United Servs. Auto. Ass'n v. Lisanby*, 47 So. 3d 1172, 1178 (Miss. 2010)). Stated differently, a plaintiff must "prove by clear and convincing evidence that the defendant 'acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud.'" *Id.* (quoting Miss. Code Ann. § 11-1-65(a)). And "[a] bad faith claim may [also] arise from an insurer's delay of payment on a claim." *Willis v. Allstate Ins. Co.*, No. 2:13-cv-60-KS-MTP, 2014 WL 5514160, at *10 (S.D. Miss. Oct. 31, 2014) (citing *James v.

9

*State Farm Mut. Auto. Ins. Co.*, 743 F.3d 65, 69 (5th Cir. 2014) (applying Mississippi law)). To establish a bad faith delay claim, a plaintiff must prove that: (1) the insurer was contractually obligated to pay the claim, (2) it "lacked an arguable or legitimate basis for its delay in paying" the claim, and (3) the delay "resulted from an intentional wrong, insult, or abuse as well as from such gross negligence as constitutes an intentional tort." *See id.* (quoting *James*, 743 F.3d at 70).

The Mississippi Supreme Court has consistently explained that Mississippi's punitive damages statute—Miss. Code Ann. § 11-1-65(a)—also "encompass[es] the gross and reckless disregard for the insured's rights." *Estate of Sylvia F. Minor*, 2024 WL 4985302, at *10 (citing *Thornhill v. Walker-Hill Env't & Zurich Am. Ins. Co. of Ill.*, 345 So. 3d 1197, 1205 (Miss. 2022) ("Additionally, in a bad faith claim against an insurer, one 'must show that the insurer lacked an arguable or legitimate basis for denying the claim, or that the insurer committed a wilful [sic] or malicious wrong, or acted with gross and reckless disregard for the insured's rights.'" (quoting *Liberty Mut. Ins. Co. v. McKneely*, 862 So. 2d 530, 533 (Miss. 2003)))).

Finally, the Mississippi Supreme Court has explained that "[t]he jury should be allowed to consider the issue of punitive damages if the trial judge determine[s] under the totality of the circumstances and in light of defendant's aggregate conduct, that a reasonable, hypothetical juror could have identified either malice or gross disregard to the rights of others." *T.C.B. Constr. Co. v. W. C. Fore Trucking,*

*Inc.*, 134 So. 3d 701, 704 (Miss. 2013). "Punitive damages are considered an 'extraordinary remedy' and should be awarded 'with caution and within narrow limits.'" *Estate of Sylvia F. Minor*, 2024 WL 4985302, at *8 (quoting *Gonzalez v. Coastal Indus. Contractors, Inc.*, 316 So. 3d 612, 618 (Miss. 2021)). "[E]ven when punitive damages are not warranted, the insurer may be liable for extracontractual damages . . . includ[ing] awards for attorneys' fees." *Id.* at *10 (citing *Veasley*, 610 So. 2d at 295); *see also Coastal Hardware and Rental Co., LLC v. Certain Underwriters at Lloyds, London*, 120 So. 3d 1017, 1029 (Miss. Ct. App. 2013) (Explaining that "attorney's fees may be awarded to insureds as extra-contractual damages when there is no arguable basis to deny coverage, even though the circumstances do not warrant punitive damages").

B.  Analysis

1.  State Farm's Motion [55] for Partial Summary Judgment

Because the record reflects there are genuine disputes as to whether State Farm had "any arguable basis" for its decision to reduce Jones's coverage under the UM policy, State Farm's Motion [55] for Partial Summary Judgment should be denied. *See Estate of Sylvia F. Minor*, 2024 WL 4985302, at *6. Put differently, there remains a genuine dispute suitable for a jury on the question of whether State Farm "acted with actual malice, [sic] gross negligence which evidences a willful, wanton or reckless disregard for the safety of others . . . ." Miss. Code Ann. § 11-1-65(a).

According to State Farm, its "investigation of the claim determined that uninsured motorist damage coverage would apply to the loss." Mem. [56] at 2. Having acknowledged there was coverage for Plaintiff's claim, State Farm assigned Jessica Fricke to the claim, who, according to State Farm, relied at least in part upon the Mitchell DecisionPoint program in evaluating Jones's claim. *See* Mem. [65] at 2. As explained by Scott Slavens, a State Farm auto claim team manager with twenty years of experience, *see* Mem. [56] at 5, Mitchell DecisionPoint is "an automated tool that [State Farm] use[s] to review medical bills in a consistent manner," Ex. [55-14] at 9-10 (Slavens's Deposition) (filed unrestricted), by, among other things, assessing diagnostic codes in the bill and identifying instances of duplicate billing and duplicate services, *id.* at 11. Another aspect of the tool is the pricing module, which reduces the reimbursement amount for medical bills to 200% of the Medicare reimbursement rate in the jurisdiction. *See id.* at 12 ("But when it comes to pricing, I'll give you an example. If a bill goes through and has an MRI that is charged at $5,000 and Medicare in that jurisdiction would allow for $1,000, State Farm's – or Mitchell would price that out at $2,000.").

According to Slavens, "it is the claim specialist's responsibility to take the information that's produced in this tool and confirm the accuracy of it. [The Mitchell Program] is just a method or mechanism that – it's really for efficiency's sake." *Id.* at 21. Thus, Slavens explains, Mitchell DecisionPoint is "just a tool that we use in our evaluation of the medical bill," *id.*, and, according to State Farm, "the claim specialist retains full discretion when evaluating the claim, and the values

12

suggested by the Mitchell program are not mandatorily applied," Mem. [65] at 2 (citing Ex. [55-16] at 27-29 (Schultze Deposition) (filed restricted access)). But, in the Court's view, there remains a factual question as to whether Fricke did handle Jones's claim on its own merits, or indeed whether, as Plaintiff claims, she simply reduced his medical reimbursements to 200% of the Medicare reimbursement rate. *See* Mem. [61] at 2.

Plaintiff argues that the reductions applied by Fricke were "not based on what State Farm or the adjuster believed were related to the accident; rather, the 'reductions that the bodily injury report are providing [are] for the Medicare fee scheduling reductions.'" *Id.* at 2 (quoting Ex. [50-3] at 19, 41 (Fricke's Deposition)). In other words, Plaintiff asserts, "State Farm only evaluates and reimburses based on a Medicare reimbursement rate, not the actual incurred expense." *Id.* And, at the very least, Fricke seemed to acknowledge that Mitchell DecisionPoint's pricing module played a substantial role in her adjustment of Jones's claim. *See* Ex. [50-1] at 23 (Fricke Deposition) (filed unrestricted) ("Q: So anything that Mr. Jones incurred after the date of loss would've been reduced in accordance with this program; is that correct? A: Correct. Yes.").

State Farm has not pointed to any medical evidence or documentation, if any exists, it used to determine that Jones's medical bills should be reduced. In the Court's view, that raises the inference that Mitchell DecisionPoint's pricing module was the exclusive basis upon which Fricke reduced Jones's reimbursement. If true, that appears to be at odds with State Farm's stated practice of evaluating each

13

claim on its own merits. *See* Mem. [65] at 2 (Explaining that "the claim specialist retains full discretion when evaluating the claim, and the values suggested by the Mitchell program are not mandatorily applied" (citing Ex. [55-16] at 27-29 (Schultze Deposition) (filed restricted access)); Ex. [50-4] at 77 (Schultze Deposition) (filed unrestricted) ("Q: Okay. But each claim is evaluated on its own merits, correct? A: Correct."). As Plaintiff points out, such an approach would also be contrary to Mitchell DecisionPoint's own disclaimers, which clearly state that:

> The information contained in the tool is based on certain limited facts and is not a substitute for an independent investigation or evaluation of the facts surrounding a claim. Mitchell does not directly or indirectly practice medicine or law, or dispense medical or legal advice. Mitchell does not guarantee the accuracy of the data and information to any particular situation, and assumes no responsibility for any consequences arising out of or related to any use of the data or information.

Mem. [61] at 4; *see also* Ex. [57-2] at 1 (filed restricted access). Further, if exclusive reliance upon Mitchell DecisionPoint's pricing module was permissible under Jones's Policy, State Farm has not pointed to any provision authorizing it. *See* Ex. [55-2] (Certified Policy). If Fricke reduced Jones's claim based exclusively upon the Medicare reimbursement rate—and without further evaluation of the medical bills or additional evidence rebutting their reasonableness—then, in the Court's view, there remains a genuine dispute as to whether State Farm had "any arguable basis" for Fricke's decision to reduce Jones's coverage under the UM policy. *See Estate of Sylvia F. Minor*, 2024 WL 4985302, at *6. That is sufficient to deny summary judgment.

Additionally, the Court notes that Jones's UM policy appears to require him to sue State Farm in order to collect under the Policy if the parties are unable to reach an agreement as to the value of the claim. *See* Ex. [55-2] at 18 ("If there is no agreement on [the amount of compensatory damages that the insured is legally entitled to collect from the owner or driver of the uninsured motor vehicle], then the insured shall . . . file a lawsuit, in a state or federal court that has jurisdiction, against . . . us . . . ." (emphasis removed)). State Farm argues that, under the Policy, it "is allowed to contest the amount of damages an insured claims under his uninsured motorist coverage," meaning it has neither breached the Policy nor acted in bad faith by contesting the damages. Mem. [63] at 6. But State Farm must still have some basis in the evidence to contest damages, and may not do so arbitrarily or in bad faith. The Court finds that there remain factual questions as to whether State Farm's method of evaluating Jones's claim was in bad faith in the first instance. *See Grattafiori v. Thompson*, No. 4:16-cv-00004-MPM-RP, 2017 WL 2964059, at *4 (N.D. Miss. May 16, 2017) (Evaluating a similar UM provision and explaining that "the Court finds that it is unclear whether State Farm acted in bad faith by failing to take additional steps to work with Grattafiori to come to an agreement as to the proper amount of damages without forcing Grattafiori to file suit against it").

The Court's task today is not to decide whether Fricke—or her employer, State Farm—was grossly negligent in the handling of Jones's claim. Rather, the Court need only decide whether a reasonable jury could make such a finding. *See,*

15

*e.g.*, *Partida Aranda v. YRC Inc.*, Civ. No. 3:18-cv-0494-D, 2019 WL 2357528, at *5 (N.D. Tex. Jun. 4, 2019) ("The court's role in deciding defendants' motion for partial summary judgment is not to resolve the fact question whether Thorp's actions and omissions actually constituted gross negligence. Rather, the court need only decide whether a reasonable jury could make this finding." (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986))). On the present record, a reasonable hypothetical juror could find that State Farm, either on its own or acting through Fricke, was grossly negligent or acted with reckless disregard for the rights of the insured, Jones. *See Thornhill*, 345 So. 3d at 1205. State Farm's Motion [55] for Partial Summary Judgment should be denied.

2.  <u>Plaintiff's Motion [50] for Partial Summary Judgment</u>

Turning next to Plaintiff's Motion [50], the arguments advanced by both parties are in substance mirror images of those raised in briefing on State Farm's Motion [55]. For the reasons given previously, the Court finds that there remain genuine issues of material fact on the question of whether State Farm—or its employee—was grossly negligent or acted with reckless disregard to the rights of the insured in this case. *See Thornhill*, 345 So. 3d at 1205. Plaintiff's Motion [50] for Partial Summary Judgment should likewise be denied.

### III. CONCLUSION

Because there are genuine issues of material fact on the questions of whether State Farm—or its employee—acted with bad faith, gross negligence, or reckless disregard for the rights of the insured, neither party is entitled to summary judgment at this stage. To the extent the Court has not addressed any of the parties' remaining arguments, it has considered them and determined that they would not alter the result.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant State Farm Mutual Automobile Insurance Company's Motion [55] for Partial Summary Judgment is **DENIED.**

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Plaintiff Walter Jones's Motion [50] for Partial Summary Judgment is **DENIED**.

**SO ORDERED AND ADJUDGED**, this the 14th day of July, 2025.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
CHIEF UNITED STATES DISTRICT JUDGE